### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOLLY ANNE MATOS,** | : | **Civil No.  4:24-CV-675** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

A claimant's ability to perform the mental demands of the workplace are often essential to the disability determination. Therefore, when an individual's ability to perform simple and complex tasks are at issue in a Social Security appeal, it is incumbent upon the Administrative Law Judge (ALJ) hearing this disability claim to provide a logical bridge between the evidence and the ALJ's legal conclusions and factual findings, a logical nexus which addresses the claimant's mental limitations in these areas and explains how they do not preclude employment. These

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

legal conclusions and factual findings are typically supported and guided by the opinions of medical experts. On this score, although it is ultimately the ALJ who makes the RFC determination, and determines which medical opinions and evidence deserve greater weight, it is also well-settled that, when evaluating medical opinions, an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. See Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000).  Moreover, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason,'" Id. at 317 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). Thus, in a case such as this where an ALJ has eschewed the opinions of medical experts in favor of his own interpretation of the record without a valid explanation, a remand is necessary.

We are reminded of these familiar principles in the instant case. In this case, the ALJ found that the plaintiff, Molly Matos, was not disabled and was capable of performing routine two or three step tasks or instructions despite the state agency medical experts whom the ALJ credited opining she was, at most, capable of performing one- to two-step tasks. Indeed, while the ALJ found the two state agency experts, who stated throughout their opinions Matos was limited to one- to two-step tasks, persuasive the ALJ actually found that "the claimant is slightly *more* limited" than these opinions stated. Yet the ALJ did not address why he failed to adopt this

2

limitation. Instead after stating that Matos was more limited than the state agency experts—who limited her to one to two steps tasks—opined the ALJ then inexplicably concluded Matos was capable of performing more complex two to three step tasks. In our view, the ALJ's internally inconsistent analysis both "reject[s] evidence for no reason," Morales at 317, and does not provide a complete logical bridge for the decision denying benefits to the plaintiff. This was error. Therefore, we will order this case remanded for further consideration by the Commissioner.

## II.  Statement of Facts and of the Case

### A. Introduction

On October 29, 2021, Molly Matos filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 19, 2021. (Tr. 17). In this application Matos alleged that she was disabled due to an array of physical and mental impairments, including neuropathy, migraines, anxiety, depression, PTSD, tremors, high blood pressure, bulging discs, and arthritis in her back. (Tr. 64). Matos was born on August 4, 1992, and was twenty-nine years old at the time of the alleged onset of her disability, making her a younger worker under the Commissioner's regulations. (Id.) She had at least a high school education and prior employment as a preschool teacher, administrative clerk, and in the service industry. (Tr. 55-56).

3

B. **Matos' Mental Impairments and the Expert Opinions Regarding Her Limitations.**

The longitudinal medical record of Matos' mental impairments reveals that she experienced a traumatic childhood and young adulthood, resulting in depression with two suicide attempts, anxiety, PTSD, and an eating disorder requiring inpatient psychiatric treatment. (Tr. 1020, 1030-33). She also underwent a partial hospitalization program for depression and PTSD during the relevant period. (Tr. 796-902).

Matos' mental impairments caused her to experience anxiety, panic attacks, depression, mood instability, and difficulty concentrating. (Tr. 1030). As consultative examiner, Dr. John Kajic, summarized on February 14, 2022:

> She reports difficulty falling asleep with frequent wakening and a loss of appetite on most days. She says she has lost about 20 lb since 08/21. Depressive symptomatology includes dysphoric mood, crying spells, hopelessness, loss of usual interests, irritability, fatigue and loss of energy, diminished self-esteem, concentration difficulties, diminished sense of pleasure, and social withdrawal. Suicidal and homicidal ideation, plan, intent, or means are denied at this time. Anxiety-related symptomatology: Excessive apprehension and worry, easily fatigued, irritability, fear of being judged or negatively evaluated in social settings, difficulty concentrating, and avoidance of social settings. Phobic responses around crowds and enclosed spaces. Trauma experienced from being physically and/or sexually abused as an adult woman and history of domestic violence; she was beat with a rifle. She has flashbacks, hyperstartle response, nightmares, hypervigilance, avoidance, intrusive thoughts, angry outbursts, detachment from others, and sleep disturbances. She reports experiencing panic attacks at least two to three times a week primarily from flashbacks. She gets

4

> palpitations, nausea, and passes out, sweating, dizziness, breathing
> difficulties, trembling, and chest pain. Manic symptomatology is
> denied. When asked about thought disorder, she says, "At night, I feel
> as if I can see things outside my window when I'm driving, and I hear
> noises when I'm trying to sleep." Paranoid ideations are denied.
> Obsessions and compulsions: The claimant reports she chronically
> bites the inside of her cheeks and lips until she bleeds. She picks the
> skin around her fingers off when she is anxious.

(Tr. 564). Thus, without question, the psychological symptoms Matos experienced

were significant and severe during the relevant period. Nonetheless, her mental

status examinations were frequently normal, and her intellectual functioning

reported as average, (e.g. Tr. 66, 78, 367, 418, 483, 504, 564, 762, 804, 934) despite

showing signs of depression (Tr. 483-84, 804-05). Indeed, the ALJ acknowledged

that Matos' emotional impairments caused her limitations in several of the

"paragraph B" criteria, including that she was moderately limited in understanding,

remembering, or applying information and concentrating, persisting, and

maintaining pace. As the ALJ summarized when considering her limitations in the

four "paragraph B" areas of mental functioning:

> In understanding, remembering or applying information, the claimant
> had a moderate limitation. The claimant alleges she has difficulty
> understanding and following instructions (11E). However, the claimant
> notes she can drive and shop by computer (11E). This implies she can
> understand, remember, and apply information. Longitudinal treatment
> notes generally show the claimant is fully oriented with normal speech,
> normal thought process, normal thought content, intact memory, intact
> associations, intact fund of knowledge, fair insight, and fair judgment
> (3F; 4F; 5F; 6F; 7F; 8F; 12F; 13F; 16F; 17F; 19F; 23F; 24F; 26F; 27F).

In interacting with others, the claimant had a moderate limitation. The claimant alleges she isolated herself, does not leave the house, and cannot be in crowds (Hearing Testimony; 11E). Regardless, the claimant states she lives with her husband and three children and attends church (11E). This implies she can interact with others. Progress notes mostly show the claimant is fully oriented, alert, pleasant, and cooperative with appropriate affect, normal speech, normal thought process, normal thought content, normal perceptions, normal behavior, fair insight, and fair judgment (3F; 4F; 5F; 6F; 7F; 8F; 12F; 13F; 16F; 17F; 19F; 23F; 24F; 26F; 27F).

With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant insists she has difficulty concentrating and completing tasks (Hearing Testimony; 11E). Nonetheless, the claimant notes she can drive and shop by computer (11E). This implies she can concentrate, persist, and maintain pace. Treatment notes largely show the claimant is fully oriented and alert with normal thought process, normal thought content, normal perceptions, intact associations, good attention span, intact concentration, fair insight, and fair judgment (3F; 4F; 5F; 6F; 7F; 8F; 12F; 13F; 16F; 17F; 19F; 23F; 24F; 26F; 27F).

As for adapting or managing oneself, the claimant had experienced a moderate limitation. The claimant maintains she gets panic attacks (Hearing Testimony; 11E). However, the claimant reports she helps feed her children and can drive and shop by computer (11E). This implies she can adapt and manage herself. Longitudinal treatment notes generally show the claimant is fully oriented, alert, pleasant, and cooperative with appropriate affect, normal speech, normal thought process, normal thought content, normal perceptions, intact memory, intact associations, good attention span, intact concentration, normal behavior, intact fund of knowledge, fair insight, and fair judgment (3F; 4F; 5F; 6F; 7F; 8F; 12F; 13F; 16F; 17F; 19F; 23F; 24F; 26F; 27F).

(Tr. 21-22).

6

The ALJ's conclusion that Matos had moderate limitations in all four areas of mental functioning was supported by the medical opinion evidence including two state agency psychological consultants, her treating provider, and a consultative examiner.

On February 25, 2022, State agency psychological consultant Dr. John Gavazzi opined that Matos had mild limitations in her ability to understand, remember, or apply information, and moderate limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. (Tr. 68). As to her sustained concentration and persistence limitations, Dr. Gavazzi opined that: "The claimant can make simple decisions. The claimant would be able to maintain regular attendance and be punctual. The claimant can carry out very short and simple instructions. The claimant can perform one- and two-step tasks." (Tr. 73). Then again, in the additional explanation portion, Dr. Gavazzi stated, "The claimant can perform one- or two-step, routine tasks in a stable environment." (Tr. 74).

On reconsideration, state agency psychological consultant Dr. Molly Cowan also opined that Matos had moderate limitations in her ability to concentrate, persist, or maintain pace and echoed Dr. Gavazzi's conclusion that "The claimant can perform one- and two-step tasks" both by way of narrative to account for these

moderate limitations and in the overall MRFC explanation section stating again that "[t]he claimant can perform one- or two-step, routine tasks in a stable environment. (Tr. 79, 84, 85).

On September 9, 2022, Matos' treating provider, CRNP Christine Buckley, also provided an opinion on Matos' mental RFC that was even more restrictive than those of the state agency experts. CRNP Buckley opined Matos would have extreme limitations in her ability to concentrate, persist, or maintain pace, and marked limitations in all other areas of mental functioning. (Tr. 939). She noted that Matos would be unable to understand and remember even very short and simple instructions, maintain attention for two-hour segments, and make simple work-related decisions. (Tr. 938).

After conducting a mental status consultative examination of the plaintiff, Dr. John Kajic completed a mental RFC assessment in which he also concluded Matos had moderate impairments in understanding, remembering, and carrying out complex instructions but no limitations in understanding, remembering, and carrying out simple instructions. (Tr. 567).

Thus, both state agency medical experts clearly opined Matos would be limited to performing one- or two-step tasks, her treating provider opined she would essentially be unable to understand and remember even short and simple

instructions, and the consultative examiner agreed she had moderate impairments in these arenas.

### C. **The ALJ Hearing and Decision**

It was against this medical backdrop that Matos' disability claim came to be heard by the ALJ on March 15, 2023, at which Matos and a Vocational Expert (VE) testified. (Tr. 37-62). The ALJ presented a hypothetical to the VE that included a limitation to two- to three-step tasks or instructions, but did not question the VE about whether a one- to two-step limitation would preclude her from performing the jobs the VE identified. (Tr. 57-62).[2]

Following this hearing, on May 15, 2023, the ALJ issued a decision denying Matos' application for benefits. (Tr. 14-31). In that decision, the ALJ first concluded that the plaintiff last met the insured status requirements of the Social Security Act on March 31, 2023, and had not engaged in substantial gainful activity from the alleged onset date of August 19, 2021, through her date last insured of March 31, 2023. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Matos had the following severe impairments: degenerative

---

[2] Curiously, the ALJ did question the VE about several other mental limitations which were not ultimately included in the RFC, including only frequently maintaining concentration, persistence, or pace, needing unscheduled breaks, and being absent for about twenty percent of the work time and the VE concluded these limitations would preclude all competitive employment. (Tr. 58-59).

disc disease of the cervical and lumbar spine, obesity, right carpal tunnel syndrome, traumatic brain injury, headaches, depression, bipolar disorder, anxiety, and post-traumatic stress disorder. (Tr. 20). At Step 3, the ALJ determined that these impairments did not meet or medically equal the severity of any listed impairments. (Tr. 20).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering the plaintiff's limitations from her impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and she could have occasionally balanced, stooped, kneeled, crouched, crawled, climbed ramps and stairs, or used foot controls bilaterally; and never have climbed ladders ropes scaffolds. She could have frequently reached, handled, fingered, felt, pushed, or pulled bilaterally; and could have occasionally overhead reached with the left upper extremity. She could have tolerated occasional exposure to cold temperature extremes; humidity; or concentrated dust, fumes, or gases. She could have never worked at unprotected heights or contact dangerous moving machinery. *She had the mental capacity to maintain concentration, persistence, or pace for two-hour segments sufficient to perform routine two to three step tasks or instructions*; could have frequently interacted with public, supervisors, or coworkers; and could have performed work that involves no more than frequent changes in work situations in a routine work setting.

(Tr. 22)(emphasis added).

In formulating the RFC, the ALJ considered the medical opinions of the four experts who opined on Matos' mental RFC. The ALJ found the opinions of Dr. Gavazzi and Dr. Cowan persuasive, explaining:

> These statements are supported by the progress notes through the date last insured, which mostly show the claimant is fully oriented, alert, pleasant, and cooperative with appropriate affect, normal speech, normal thought process, normal thought content, normal perceptions, intact memory, intact associations, good attention span, intact concentration, normal behavior, intact fund of knowledge, fair insight, and fair judgment (3F; 4F; 5F; 6F; 7F; 8F; 12F; 13F; 16F; 17F; 19F; 23F; 24F; 26F; 27F). These statements are also consistent with the claimant's lack of recent inpatient mental health treatment. Further, Dr. Gavazzi and Dr. Cowan are highly qualified experts who had the opportunity to review the claimant's records.

(Tr. 28). The ALJ went on to credit the statements of these experts, but find they were not quite restrictive enough, stating: "Thus, the undersigned finds Dr. Gavazzi's and Dr. Cowan's statements are persuasive. However, based on the medical evidence of record, the undersigned finds the claimant is slightly more limited as she moderate limitations understanding, remembering, or applying information." (Id.)

Inexplicably, despite concluding that the opinions of both state agency mental consultants finding Matos was capable of following and remembering, at most, one- to two-step instructions persuasive, and holding that Matos would be even "more limited" than those opinions required, the ALJ ultimately concluded Matos could

11

perform routine two- to three-step tasks or instructions, a limitation that was not presented by any of the medical experts and required *more* of the plaintiff than the opinions of the state agency experts.[3]

Having made these findings, the ALJ concluded that Matos could not return to her past work but could perform other light exertional work in the national economy. (Tr. 30-31). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Matos contends, *inter alia*, that the ALJ erred in failing to address the opinions of the state agency psychologists, supported by the opinions of the other medical experts, that she be limited to one- to two-step instructions. After a review of the evidence, we agree that the ALJ's omission of this limitation, and adoption of a less restrictive limitation of two- to three-step instructions was divorced from any medical opinion and unexplained in the ALJ's analysis, leaving the factual, legal and logical bridge between the evidence and the ALJ's findings lacking. Therefore, we will remand this case for further consideration by the Commissioner.

---

[3] The ALJ also found the opinion of consultative examiner Dr. Kajic that she had moderate limitations in understanding, remembering, and carrying out instructions persuasive but found the more restrictive opinion of Matos' treating provider, CRNP Buckley, unpersuasive.

III.  **Discussion**

    A. **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable

meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's

rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the <u>Hess</u> decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able

to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11

19

(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir.

20

2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from

a hierarchical form of review to a more holistic analysis. As one court as aptly

observed:

> The regulations regarding the evaluation of medical evidence have been
> amended for claims filed after March 27, 2017, and several of the prior
> Social Security Rulings, including SSR 96-2p, have been rescinded.
> According to the new regulations, the Commissioner "will no longer
> give any specific evidentiary weight to medical opinions; this includes
> giving controlling weight to any medical opinion." Revisions to Rules
> Regarding the Evaluation of Medical Evidence ("Revisions to Rules"),
> 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see
> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
> must consider all medical opinions and "evaluate their persuasiveness"
> based on the following five factors: supportability; consistency;
> relationship with the claimant; specialization; and "other factors." 20
> C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and assigning
> "weight" to a medical opinion, the ALJ must still "articulate how [he
> or she] considered the medical opinions" and "how persuasive [he or
> she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and
> (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
> determining the persuasiveness of medical opinions are consistency and
> supportability," which are the "same factors" that formed the
> foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg.
> 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered
> the supportability and consistency factors" for a medical opinion. 20
> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to
> "supportability," the new regulations provide that "[t]he more relevant
> the objective medical evidence and supporting explanations presented
> by a medical source are to support his or her medical opinion(s) or prior
> administrative medical finding(s), the more persuasive the medical
> opinions or prior administrative medical finding(s) will be." Id. at §§
> 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with

respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

> Further, in making this assessment of medical evidence:
>
>> An ALJ is [also] entitled generally to credit parts of an opinion without
>> crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
>> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
>> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
>> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
>> treating source's opinion and rejecting other portions"); Connors v.
>> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
>> 10, 2011). It follows that an ALJ can give partial credit to all medical
>> opinions and can formulate an RFC based on different parts from the
>> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
>> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is

no evidence of any credible medical opinion supporting a claimant's allegations of

disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

### D. **This Case Will Be Remanded.**

After a review of the record, we conclude that the ALJ's adoption of a two- to

three-step limitation in complete contravention to the medical opinions he found

persuasive, which concluded Matos was limited to following one-to-two step

instructions, was error. At the outset, in reviewing this ALJ's decision we find

ourselves at the intersection between two well-settled paradigms in the Social

Security field. First, our highly deferential standard of review empowers "[t]he ALJ – not treating or examining physicians or State agency consultants – [to] make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Thus, our decision in this case in no way undercuts the legal tenet that an ALJ is not required to adopt every limitation opined by the experts but "can formulate an RFC based on different parts from the different medical opinions." Durden, 191 F.Supp.3d at 455. However, at base, an ALJ must draft a reviewable opinion that is grounded in the evidence and provides the court with an adequately articulated rationale for the limitations adopted. Here, the internal inconsistencies in the ALJ's evaluation of the medical opinion evidence and the adoption of a two-to-three step instruction limitation in the RFC despite the evidence he credited stating the claimant should be limited to one-to-two step instructions defy logic and are not explained in the ALJ's decision.

Indeed, as previously discussed, two state agency medical experts opined that Matos would be moderately limited in her ability to understand and remember detailed instructions, explaining, "The claimant can make simple decisions. The claimant would be able to maintain regular attendance and be punctual. The claimant can carry out very short and simple instructions. The claimant can perform one- and two-step tasks." (Tr. 73, 85). Both experts reiterated this one-to-two step task

limitation in both the narratives within the worksheet section and the final narrative explanation of the RFC assessment. The ALJ found these opinions persuasive, but concluded, based on the medical evidence of record, that Matos would be even *more* limited than these experts opined. Nonetheless, the ALJ adopted an RFC requiring Matos to perform two-to-three step tasks, a mental RFC that was less restrictive than the opinions the ALJ concluded were not limiting enough. This assessment was untethered from any of the opinion evidence and was inconsistent with the ALJ's determination that Matos was more severely impaired than the state agency experts had found, since the ALJ failed to explain in body of the RFC assessment why Matos was not subject to the limitations opined by the experts but instead could perform two- to three-step tasks.

The ALJ's RFC assessment on this score runs afoul of several well-settled legal tenets. First, as enumerated above, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. Moreover, it is well-settled that an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. Morales 225 F.3d at 319. These mandates apply here in the context of the ALJ's assessment of medical opinion

evidence. Thus, although it is the province of the ALJ to decide which parts of the medical opinion evidence to credit, and an ALJ is not required to adopt every limitation opined by the experts whose opinions he found persuasive, an ALJ also "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d at 317. This view is equally supported under the new mental RFC paradigm developed in Hess, which does not require the ALJ to adhere to a particular format in conducting the mental RFC analysis, but still requires a valid explanation grounded in the evidence.

In the instant case, although the ALJ explained the longitudinal medical record showing relatively normal mental status examinations and Matos' ability to perform some activities of daily living was not entirely consistent with her statements regarding the severity of her mental impairments, the ALJ found the opinions of the state agency psychological consultants, which clearly indicated Matos should be limited to one- to two-step instructions, persuasive. The ALJ even concluded these opinions were not restrictive enough, stating she was "more limited" than these experts opined. The ALJ then crafted a mental RFC to account for these limitations, but instead of limiting Matos to one- to two-step instructions, inexplicably and seemingly based upon no evidence in the record, concluded she could perform two or three step tasks. This unsupported RFC limitation is neither

explained by nor grounded in the evidence and leaves the Court to conclude the ALJ unilaterally rejected all medical opinions in favor of his own subjective impressions. This was error. See Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016) (citing Thanh Tam Vo v. Colvin, No. 1:14–CV–00541–GBC, 2015 WL 5514981, at *4 (M.D. Pa. Sept. 15, 2015)) (remanding where ALJ completely rejected all medical opinions, even the one that supported the ALJ's RFC).

Moreover, this error was not harmless where the two of the three jobs identified by the ALJ require Matos to perform work at an SVP 2 level. Since the ALJ did not question the vocational expert about whether a limitation to one-to-two step tasks would preclude her from work at that reasoning level,[4] we are without the benefit of a vocational expert's testimony regarding whether a limitation to one- to two-step tasks would preclude Matos from the SVP 2 level occupations identified in the ALJ's decision. We do note, however, that other courts have found that Reasoning Levels 2 and 3 are not consistent with "simple, one-to-two step tasks." See Daniel M. v. Kijakazi, No. 2:21-CV-243, 2023 WL 154909, at *3 (D. Vt. Jan. 11, 2023) (collecting cases).

---

[4] The ALJ did question the ALJ about other mental limitations, all of which would have precluded Matos from competitive employment. Indeed, the omission of any mention of this one-to-two step task limitation despite the ALJ explicitly assigning a two-to-three step limitation, is striking.

Finally, even assuming a one-to-two step task limitation would not preclude the plaintiff from performing the remaining job identified by the ALJ, garment packer (DOT 920.687-018) (SVP-1), there are only 12,000 jobs nationally, a number which relevant caselaw would say is, at most, borderline when it comes to whether it constitutes a significant number in the national economy.

While the regulations do not set any precise metrics for assessing what may be a significant number of jobs, the Third Circuit has provided us with benchmarks regarding what constitutes a substantial number of jobs in the national economy, finding that, "the testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers." Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013). Conversely, when the number of jobs identified in the national economy totals less than 10,000 positions, or the number of regional jobs falls below 100, courts have frequently found that the Commissioner's burden of proving at Step 5 that jobs existed in significant numbers in the national economy has not been met. See e.g., Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012) (135 jobs in the regional economy held not significant); Ellis v. Kijakazi, 553 F. Supp. 3d 628, 635 (E.D. Wis. 2021) (remanding where only 14,500 jobs identified in the national economy); Ochoa v. Colvin, No. 1:12-CV-00604-SKO, 2013 WL 4816130, at *8 (E.D.Cal.

Sept. 6, 2013) (80 jobs in Sacramento were not significant); <u>Valencia v. Astrue</u>, No. C 11-06223 LB, 2013 U.S. Dist. LEXIS 41758, 2013 WL 1209353, at *18 (N.D.Cal. Mar. 25, 2013) (114 regional jobs in San Francisco Bay area and 14,082 national jobs were not significant); <u>Lenon v. Apfel</u>, 191 F. Supp. 2d 968, 979 (W.D. Tenn. 2001) (117 jobs in the regional economy held not significant); <u>Jimenez v. Shalala</u>, 879 F. Supp. 1069, 1076 (D. Colo. 1995) (200–250 jobs in regional economy held not significant). Given the flaws in this decision and the lack of any VE testimony regarding what jobs Matos could perform had the ALJ included a one-to-two step task limitation, we are that this error was not harmless.

Simply put, more was needed here by way of explanation on the part of the ALJ to support the decision Matos could perform two to three step tasks. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

IV.    **Conclusion**

Accordingly, for the foregoing reasons, the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

_s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: October 10, 2025